**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Troy K. Scheffler,

Plaintiff,

v.

City of Coon Rapids, *et al.*,

Defendants.

Civ. No. 16-4116 (RHK/HB)

**MEMORANDUM OPINION AND ORDER**

---

Peter J. Nickitas, Peter J. Nickitas Law Office, L.L.C., Minneapolis, Minnesota, for Plaintiff.

Andrew T. Jackola, Jason J. Stover, Anoka County Attorney's Office, Anoka, Minnesota, for Defendant Anoka County.

---

## INTRODUCTION

This action arises out of an "energy improvement loan" obtained by Plaintiff Troy Scheffler in 2013. Scheffler alleges that the Defendants – the City of Coon Rapids ("Coon Rapids"), Anoka County (the "County"), and the Greater Metropolitan Housing Corporation ("GMHC") – fraudulently recorded a lien on his property in connection with the loan. He commenced this action in 2016, asserting claims against all Defendants under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. He also alleged that Anoka County violated the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 *et seq.*, and that Assistant County Attorney Andrew Jackola, Esq., defamed him in certain pre-litigation correspondence.

Scheffler has now settled and dismissed his claims against Coon Rapids and GMHC; all that remain for resolution are his claims against the County. Those claims are currently before the Court on competing cross-Motions: the County moves to dismiss all of Scheffler's claims, while Scheffler cross-moves for partial summary judgment on his state-law claims. For the reasons set forth below, the Court will grant the County's Motion in part and dismiss the federal claims, and it will decline to exercise supplemental jurisdiction over the remaining claims, rendering Scheffler's cross-Motion moot.

**BACKGROUND**

The Amended Complaint and the documents embraced by it[1] allege the following facts, taken as true for purposes of the County's Motion. Scheffler is a disabled adult who lives in Coon Rapids. (Am. Compl. ¶¶ 10, 14.)[2] In June 2013, he applied for an "energy improvement loan," to be funded by a "block grant" from the United States Department of Housing and Urban Development ("HUD") for energy-efficient home improvements. (Id. ¶ 15; Nickitas Decl. Ex. L.) The loan was to be secured by a lien on Scheffler's property. (Nickitas Decl. Ex. L.) The Amended Complaint does not specify which Defendant was the recipient of the HUD funds or which Defendant was going to loan those funds to Scheffler. Nor does it indicate how Defendants relate to one another vis-à-vis the loan or the HUD funds. Instead, Scheffler simply alleges that he applied for

[1] Scheffler's loan materials and related documents are referenced throughout the Amended Complaint and, accordingly, are properly considered by the Court. See, e.g., Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) (court may consider materials "embraced by the pleadings" when resolving motion to dismiss) (citations omitted).

[2] Although not directly relevant to the case *sub judice*, the Court notes that Scheffler is a serial litigant, having commenced no fewer than 20 cases in this Court since 2009.

a loan "with Coon Rapids and Anoka County through GMHC." (Am. Compl. ¶ 15.) His loan application, however, is on a pre-printed form entitled "*Coon Rapids* Energy Loan Application" and, at the time he applied, Scheffler signed a "Subordination Policy" indicating that Coon Rapids would agree to subordinate *its* mortgage on his property under certain circumstances. (Nickitas Decl. Ex. L (emphasis added).) Furthermore, the loan was conditioned on a satisfactory "environmental assessment," and the form on which that assessment was completed listed the "grantee" of the HUD funds as "the City of Coon Rapids." (Id. Ex. M.)[3]

On August 7, 2013, GMHC wrote Scheffler to advise that he met the criteria to obtain the loan, but it had not yet been approved because he had not submitted all of the required information. (Id. Ex. A.) The letter also specified that the loan could not be approved "until the Housing Resource Center [part of GMHC] closes the loan and it has been approved by Anoka County." (Id.) Scheffler then obtained bids from contractors for his proposed home improvements, the lowest three of which totaled $7,580 (comprising $3,800 for HVAC work, $2,880 for insulation, and $900 for door/window repairs by an entity named Bear Claw Construction LLC ("Bear Claw")). (Am. Compl. ¶¶ 16-17, 21.) After he submitted those bids, an Anoka County official certified that the proposed work met environmental guidelines (Nickitas Decl. Ex. M), and the loan was approved.

---

[3] As near as the Court can tell, it appears that the HUD funds were distributed to Anoka County (see Nickitas Decl. Ex. E), which in turn passed that money on to municipalities via grants, to be used for loans to local residents. It is unclear from the record what role GMHC played in this process, although it seems to be some type of administrator for such loans.

On October 1, 2013, Scheffler signed several documents relating to the loan. First was a document styled "Coon Rapids Housing Rehabilitation Loan Program Participation Agreement" (the "Participation Agreement"), which set forth the terms of the loan he was receiving. (Nickitas Decl. Ex. B.) The Participation Agreement provided for a total loan amount of $7,580 and, consistent with GMHC's August 2013 letter, specified that "[f]inal determination of eligibility" to receive the loan "rests with the County." (Id.) Next Scheffler signed a Notice of Right to Rescission, a Truth-in-Lending Disclosure Statement, and a HUD-1A form (also known as a "Settlement Statement"), each of which provided additional information about the loan. (See id. Exs. O-Q.) These documents indicated that they were prepared by GMHC and that GMHC was the "lender" for Scheffler's loan. (Id. Ex. Q.) Finally, Scheffler also signed a document styled as a "Repayment Agreement," which lies at the heart of the present dispute. (See Skepper Decl. Ex. 2.) That document, which is in the nature of a promissory note, indicated that the "Lender" on Scheffler's loan was Coon Rapids, and that Scheffler was granting the City a lien on his home. (Id.) Although Scheffler's notarized signature on the last page of the Repayment Agreement bears the date October 1, 2013, many of the terms of the agreement were left blank – including the amount of the loan and the date upon which it was entered into by the parties. (Id.)

In any event, the following day Anoka County issued a "Proceed to Work" Order, authorizing the three contractors to begin working on Scheffler's home. (Nickitas Decl. Ex. R.) GMHC subsequently paid for the insulation and HVAC work, but Scheffler discovered a problem with the door/window repairs by Bear Claw. In June 2014, he

contacted GMHC and Coon Rapids, which allowed him to obtain new bids for the work. (Am. Compl. ¶¶ 21-23.) The lowest bid he received was for $1,799. The $900 Bear Claw contract was then canceled, and the new contractor completed the work later that month, raising the total amount paid to $8,461.90 (after accounting for a $17.10 payment Coon Rapids required Scheffler to make). (Id. ¶¶ 24-30.)[4] Scheffler, however, never signed or received new loan documents increasing his loan from the original principal amount ($7,580) to the amount actually paid for the work ($8,461.90).

On September 12, 2014, Coon Rapids recorded the Repayment Agreement with the Anoka County Division of Property Records as a lien against Scheffler's property. (Id. ¶ 31; Nickitas Decl. Ex. C.) The recorded document, however, no longer contained blanks, as it did when Scheffler signed it on October 1, 2013. Rather, it indicated that the total amount loaned to Scheffler was $8,461.90 and that the Repayment Agreement had been entered into on October 2, 2013; the notarized signature on the last page, however, continued to bear an October 1, 2013 date. (Nickitas Decl. Ex. C.) According to Scheffler, this was a "falsified" document: "If the loan amount of $8,461.90 did not exist until June 4, 2014," when the replacement contractor completed the door/window work at his home, he "could not possibly have signed for it on October 1, 2013." (Am. Compl. ¶ 36.)

Scheffler's attorney, Peter Nickitas, Esq., later wrote to Coon Rapids City Attorney David Brodie with his concerns. Nickitas alleged that the Participation

[4] This amount is calculated as follows: $3,800 for HVAC + $2,880 for insulation + $1,799 for windows/doors - $17.10 payment by Scheffler = $8,461.90.

Agreement had been tampered with by attaching Scheffler's original notarized signature page to a different version of the Participation Agreement containing a different date and a higher loan amount. (Nickitas Decl. Ex. U.) He demanded that "the City of Coon Rapids' lien of $8,461.90 upon Mr. Scheffler'[s] real property . . . be removed . . . immediately." (Id.) On June 9, 2016, Nickitas received a letter from Jackola, advising that he was "in receipt of [the] letter [to] David Brodie." (Id. Ex. W.)[5] Jackola denied that the recorded Participation Agreement was fraudulent or that it had been tampered with. He continued: "I suspect that fraud may be involved in the heart of this dispute, but it is not so on the part of the City of Coon Rapids or the [County]." (Id.) He also rejected Nickitas's demand to remove the lien from Scheffler's property. (Id.)

On December 8, 2016, Scheffler commenced this action, later filing an Amended Complaint setting forth numerous claims against Coon Rapids, GMHC, and the County. By Stipulation filed March 3, 2017, Scheffler voluntarily dismissed his claims against Coon Rapids and GMHC (Doc. No. 39; see also Nickitas Decl. Ex. D), leaving only his claims against the County for resolution. Those claims assert (1) violations of TILA and REPSA (Counts I and II, respectively), (2) violations of the MGDPA (Counts III and V), and (3) defamation based on Jackola's June 9, 2016 letter (Count IV), for "impl[ying] that fraud" had been committed by Scheffler. The County now moves to dismiss these claims, and Scheffler cross-moves for partial summary judgment on his MGDA and defamation claims. The Motions have been fully briefed and are ripe for disposition.

[5] It is unclear how Jackola received a copy of Nickitas's letter.

## STANDARD OF DECISION[6]

A complaint will survive a motion to dismiss only if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor will a complaint suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557). Instead, the plaintiff must set forth sufficient facts in his complaint to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). In reviewing a motion to dismiss, the Court "must accept a plaintiff's specific factual allegations as true but [need] not . . . accept . . . legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556).

## ANALYSIS

### I. The federal claims

Congress enacted TILA to ensure that lenders provide "meaningful disclosure of credit terms so that [a] consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The

[6] The Court recites here only the standard for reviewing a motion to dismiss, since it does not reach Scheffler's cross-Motion for Partial Summary Judgment on his state-law claims.

statute requires that several pieces of information be provided in connection with a loan, including the annual percentage rate to be charged, the amount being financed, and the due dates for the loan's payments. § 1602(v); § 1638(a). RESPA had a similar genesis; it was enacted to ensure that consumers engaging in real-estate transactions were "provided with greater and more timely information on the nature and cost of the settlement process." 12 U.S.C. § 2601(a).[7] Like TILA, it requires that persons engaging in "settlement services" – such as title searches or inspections, see 12 U.S.C. § 2602(3) – make certain disclosures in "settlement statements" provided to consumers as part of a real-estate transaction. See, e.g., 12 C.F.R. § 1024.8; Pac. Ins. Co. v. Burnet Title, Inc., 380 F.3d 1061, 1065 (8th Cir. 2004).

Here, Scheffler alleges that Anoka County violated TILA by "fail[ing] to make the disclosures of the correct amount financed" and RESPA by "fail[ing] to [provide] . . . settlement statements" in connection with the September 12, 2014 lien. (Am. Compl. ¶¶ 88, 92.) But both of these claims are fundamentally flawed.

**A. TILA**

Under TILA, only a "creditor" is required to make disclosures in connection with a loan. 15 U.S.C. § 1638(a). The term "creditor" is defined, in pertinent part, as an entity that "both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four

[7] At the time of the loan here, "settlement" was defined as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called 'closing' or 'escrow' in different jurisdictions." 24 C.F.R. § 3500.2 (2011).

installments or for which the payment or a finance charge is or may be required, *and (2) is the [entity] to whom the debt arising from the consumer credit transaction is initially payable*." § 1602(g) (emphasis added). This definition dooms Scheffler's claim, because there is no dispute his loan was not "initially payable" to the County. While he points to several items indicating the County was *involved* in the loan, such as by approving the contractors performing the work on his home, the Amended Complaint nowhere indicates that the County was the entity loaning funds to him or that he had any obligation to pay it.

This conclusion is bolstered by the documents in the record, as well as Scheffler's own conduct. The only document evidencing an obligation to pay *anyone* was the Repayment Agreement, and that agreement clearly and expressly indicates that the "lender" was *Coon Rapids*, not the County. (Nickitas Decl. Ex. C.) In addition, Scheffler's loan application was on a form entitled "*Coon Rapids* Energy Loan Application." (Nickitas Decl. Ex. L (emphasis added).) The Subordination Policy indicated that *Coon Rapids* would be obtaining a lien on his home, and it was in fact *Coon Rapids* that recorded the lien giving rise to this case. (Id.; Am. Compl. ¶¶ 31, 42.) And, when a problem arose with Bear Claw's work, Scheffler did not contact the County to alter the terms of the loan, but rather contacted GMHC and Coon Rapids. (Am. Compl. ¶ 23.) Simply put, the pleadings leave no doubt the loan was not "initially payable" to the County. Accordingly, it is not a "creditor," and the TILA claim fails.

Perhaps recognizing this defect, Scheffler argues that "[a]n entity which *approves* a loan to a consumer and shoulders all or some of the risk in non-performance of the loan

is a creditor under TILA." (Mem. in Opp'n at 23 (emphasis added).) In support, he cites Ford Motor Credit Co. v. Cenance, 452 U.S. 155 (1981), but that case does not aid him.

To be sure, the Supreme Court recognized in Ford that someone other than a lender (in that case, a "credit arranger") could be a "creditor" under TILA. There, Ford dealerships prearranged with Ford's own finance company, Ford Motor Credit Co. ("FMCC"), to extend credit to buyers. The dealerships would negotiate the sales and arrange for financing through FMCC, but FMCC would actually loan the funds needed to purchase the vehicles, and the dealerships bore no risk in the transactions. Under those facts, the Supreme Court concluded that "*both* the dealers and FMCC" were "creditors" under TILA. Id. at 157-58 (emphasis added). On the surface, therefore, Ford might appear to support Scheffler's argument.

But following Ford, Congress modified TILA's definition of the term "creditor" in order to "simplify" it. See Riviere v. Banner Chevrolet, Inc., 184 F.3d 457, 460 (5th Cir. 1999). The goal of the modification was "to eliminate the problem of multiple creditors in a transaction." Kinzel v. Southview Chevrolet Co., 892 F. Supp. 1211, 1216 (D. Minn. 1995) (Rosenbaum, J.) (quoting 12 C.F.R. § 226.2, cmt. 2(a)(17)(i), Supp. I at 296 (1994)). The modified definition is the one that continues to exist today, which defines a creditor as "the [entity] to whom the debt arising from the consumer credit transaction is initially payable." 15 U.S.C. § 1602(g). In other words, Ford's rationale that a loan can involve multiple creditors no longer stands; only the creditor to whom a debt is initially payable is the "creditor" under TILA. And here, that is simply not the County.


### B. RESPA

A similar analysis applies to the RESPA claim. Scheffler alleges that the County violated the statute by failing to provide a "settlement statement . . . with the September 12, 2014 lien." (Am. Compl. ¶ 92.)[8] Yet, there is no suggestion the County played a role in recording that lien – indeed, the Amended Complaint specifically alleges that *Coon Rapids* did so. (Id. ¶¶ 31, 42.) More importantly, the settlement statement to be provided in connection with a real-estate transaction must be completed by a "settlement agent." 12 C.F.R. § 1024.8(a), (b). RESPA does not define the term "settlement agent," but its implementing regulations tie the term to "settlement services" (see 12 C.F.R. § 1024.2(b)(9) (noting that "settlement services" include "[c]onducting [a] settlement by a settlement agent")), which as previously noted means services in connection with closing a mortgage loan, such as title searches and home inspections. (See supra note 7.) Scheffler simply offers nothing to suggest the County was a "settlement agent" in connection with either the loan or, more importantly, the "fraudulently" recorded lien – again, he assails the alleged failure to provide a settlement statement *at the time the lien was recorded*, and there is no indication the County played any part in that process. (See Am. Compl. ¶¶ 31, 42.)[9]

---

[8] At times in his brief, Scheffler also appears to suggest the County violated RESPA by failing to respond to a "qualified written request" from him. (See, e.g., Mem. in Opp'n at 25.) No such claim is pleaded in the Amended Complaint, but regardless, such a claim would fail because only a loan *servicer* is required to respond to this type of request, and the County was not a servicer. See 12 U.S.C. § 2605(i)(2)-(3) (defining "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan").

[9] To be sure, the lien was recorded in Anoka County's property records. But Scheffler cites no authority for the proposition that a public entity maintaining property records can be sued for

## II. The remaining claims

For the foregoing reasons, Scheffler's federal claims fail. Yet, subject-matter jurisdiction in this action is premised on the existence of a federal cause of action. Jurisdiction over the state-law claims exists solely by virtue of the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides jurisdiction over state-law claims forming part of the same "case or controversy" as federal ones. But the exercise of supplemental jurisdiction is discretionary, and where all federal claims have been dismissed prior to trial, "even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); accord, e.g., Wilson v. Miller, 821 F.3d 963, 971 (8th Cir. 2016). Accordingly, the Court declines to exercise supplemental jurisdiction over Scheffler's state-law claims, and they will be dismissed without prejudice.

Finally, the Court notes that the County has moved for sanctions against Scheffler and Nickitas under Federal Rule of Civil Procedure 11, arguing that the defamation claim is legally frivolous. Because the Court has declined to exercise supplemental jurisdiction over that claim, it also declines to address whether assertion of the claim should be met with sanctions. Indeed, resolution of the request for sanctions would require opining on the merits of the claim, and under the circumstances, that should be left for another day (and another tribunal).

---

accepting and recording an invalid or fraudulent lien. As the County notes, it is not responsible "for policing the accuracy of documents recorded by third parties in its Division of Property Records." (Def. Mem. at 13.)

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Anoka County's Motion to Dismiss (Doc. No. 13) is **GRANTED IN PART**. The Motion is **GRANTED** as to Scheffler's federal claims (Counts I and II of the Amended Complaint), and those claims are **DISMISSED WITH PREJUDICE**. The Court declines to exercise supplemental jurisdiction over Scheffler's state-law claims (Counts III-V of the Amended Complaint), and those claims are **DISMISSED WITHOUT PREJUDICE**. As a result, Scheffler's Motion for Partial Summary Judgment (Doc. No. 24) is **DENIED AS MOOT**. The Court also **DENIES WITHOUT PREJUDICE** the County's Motion for Sanctions (Doc. No. 18).

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April 11, 2017               s/Richard H. Kyle
                                    RICHARD H. KYLE
                                    United States District Judge